**Walter L. AVANT, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 2588.

United States District Court
E. D. Virginia,
Norfolk Division.
Sept. 25, 1958.

803

Louis B. Fine and Howard I. Legum, Norfolk, Va., for plaintiff.

L. S. Parsons, Jr., U. S. Atty., John M. Hollis, Asst. U. S. Atty., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, District Judge.

The issue presented herein is whether Civil Service Retirement funds accumulated to the credit of an employee at the time of bankruptcy of the employee, who subsequently receives a discharge in bankruptcy, may thereafter be used by the United States as a setoff, at the time of retirement or termination of service, in partial satisfaction of an indebtedness due by the employee to the Federal Housing Administration as of the date of bankruptcy, where the indebtedness has been regularly listed in the bankrupt's schedules. This Court holds that such retirement funds may not be thus appropriated by the Government.

Plaintiff, following the termination of his service as a Civil Service employee, made demand on June 28, 1957, upon the United States Civil Service Commission for a refund of his retirement deductions aggregating $2,432.77. Counsel agree that, in the adjustment of sick leave and annual leave, plaintiff is indebted to the Government in the sum of $19.98 for transactions arising subsequent to the bankruptcy proceedings, which amount is properly the subject of setoff, leaving a principal balance due in the sum of $2,412.79. On October 2, 1957, the Commission declined the refund, stating that the funds to plaintiff's credit in the retirement fund were exhausted in partial payment of a claim submitted by the Government to the Commission on March 11, 1957; said claim being in the sum of $3,451.38, arising out of a default in payment of an obligation due to the Federal Housing Administration which was discharged in bankruptcy.

■ On October 3, 1955, plaintiff filed his voluntary petition in bankruptcy, and was adjudicated bankrupt on the same day. Under Schedule A–4, "Liabilities on Notes or Bills Which Ought to be Paid by the Drawers, Makers, Acceptors, or Indorsers", there appears a listing of certain creditors including "Federal Housing Administration, Washington, D. C." While the amount listed as due to F. H. A. is somewhat less than the amount now contended by the Government, counsel do not urge that plaintiff was indebted to F. H. A. on more than one account. The F. H. A. does not concede that it received any notice of the bankruptcy proceedings, but the practice in the office of the Referee in Bankruptcy is to place any undelivered envelopes in the case file and no envelope addressed to Federal Housing Administration appears therein[1]. The presumption is that the notice was mailed and received. A notice of first meeting of creditors and order to show cause was mailed on October 5,

1955, returnable on October 19, 1955. Subsequently, on October 21, 1955, a separate notice was mailed to creditors fixing December 15, 1955, as the last day for filing objections to the discharge. The record reflects that the discharge in bankruptcy was granted on October 24, 1956, more than one year after the notices had been mailed to creditors.

■ At the time plaintiff was adjudicated a bankrupt on October 3, 1955, the sum of $1,837.41 had accumulated in the retirement fund. This item need not have been listed as an asset in the bankruptcy schedules, and admittedly is not subject to withdrawal until the employee's service is terminated by retirement or otherwise.

Contrary to a decision of the Comptroller General dated June 21, 1943 (22 Comp.Gen. 1119) wherein it is stated that a discharge in bankruptcy precludes the use of Civil Service retirement funds as a setoff toward a Federal Housing Administration indebtedness, the Civil Service Commission now invites a ruling by the Court. The United States filed a motion for summary judgment, but later counsel agreed that the matter could be considered upon the basis of the pleadings, affidavits, and testimony of one witness. The Government does not insist that a debt due the Federal Housing Administration is not properly dischargeable in bankruptcy—it merely states that it has the inherent power to setoff claims held against its debtors, and that the discharge in bankruptcy is unavailable as a sword to compel the Government to abandon the security in its hands.

Under the law, the retirement moneys are nonassignable, either in law or equity, and are not subject to execution, levy, attachment, garnishment, or other legal process. 5 U.S.C. § 2265 (formerly 5 U.S.C. § 729), 70 Stat. 758.

Section 68 of the Bankruptcy Act, 11 U.S.C. § 108, relating to the subject of setoffs and counterclaims, provides in part as follows:

---

1. Two envelopes appear in the file but relate to another creditor.

"(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"(b) A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision (g) of section 93 of this title * * *."

It will be noted that plaintiff's bankruptcy proceedings, including his discharge on October 24, 1956, preceded his retirement as a Civil Service employee on June 28, 1957. It was on this latter date, and not prior thereto, that plaintiff first became entitled to demand the refund of retirement funds. It was on the same date that a debtor-creditor relationship came into being, with the Civil Service Commission in the capacity of debtor and plaintiff as the creditor. When the Government exercised the attempted setoff on August 9, 1957, the debt upon which the setoff was predicated had long since been discharged. Obviously to contend that both claims had matured at the time plaintiff's suit had been filed is a fallacious statement made without regard to the provisions of the Bankruptcy Act. No situation of mutual debts or mutual credits existed at the time of bankruptcy or at the time of the institution of this action.

█ The principles governing the applicability of setoff in bankruptcy proceedings is stated in McDaniel Nat. Bank v. Bridwell, 8 Cir., 74 F.2d 331. It was there held that mutuality of debts and credits between the bankrupt and the party claiming the right of setoff must exist when the petition in bankruptcy was filed; the latter date being the time when the right of setoff is measured. Additionally, it is said that two debts must exist, one of the creditor and one of the bankrupt's estate; and that the debts must be mutual, i. e., the creditor's debt must be owed to the estate of the bankrupt, and the estate's debt must be owed to this creditor. Tested by these principles it is abundantly clear that mutuality of debts and credits was lacking on the date the petition in bankruptcy was filed by the plaintiff, Avant. True, Avant owed the Federal Housing Administration, an agency of the United States, but the United States owed the plaintiff nothing until his retirement or termination of service. The situation is not unlike that of a banking institution holding a deposit for a special purpose and attempting to exercise the right of setoff. While general deposits in a bank, subject to withdrawal at will, create a debtor-creditor relationship, it is well settled that deposits for special purposes are held as trust funds and not as bank assets, hence the bank is without the right to appropriate the deposit to its own use as a setoff. New York County Nat. Bank v. Massey, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380; United States v. Butterworth-Judson Corporation, 267 U.S. 387, 45 S.Ct. 338, 69 L.Ed. 672; Libby v. Hopkins, 104 U.S. 303, 26 L.Ed. 769; In re Gans & Klein, D.C., 14 F.2d 116, affirmed sub nom. Union Bank & Trust Co. of Helena, Mont. v. Loble, 9 Cir., 20 F.2d 124, certiorari denied 275 U.S. 545, 48 S.Ct. 83, 72 L.Ed. 417.

█ Aside from the foregoing considerations, public policy dictates that accumulated credits in Civil Service retirement moneys should not be subjected to the exhaustion of a debt formerly due to the United States and discharged in bankruptcy. In this case the Government goes further. It claims not only the accumulated retirement funds as of the date of bankruptcy, but also all other retirement funds thereafter added subsequent to bankruptcy. The United States has agreed to make certain disposition or application of the retirement funds. The law is equally well settled that one who secures possession of property or money, under such an agreement for disposition or application, is obligated to perform accordingly or to return the property or money to him from whom possession was received.

One cannot repudiate his contract, and, in advantage of his wrong, otherwise dispose of the property or money to his own benefit. Hanover Nat. Bank of City of New York v. Suddath, 215 U.S. 110, 30 S.Ct. 58, 54 L.Ed. 115; Reynes v. Dumont, 130 U.S. 354, 9 S.Ct. 486, 32 L.Ed. 934.

Holding that plaintiff is entitled to judgment for the amount to plaintiff's credit in the retirement fund as of June 28, 1957, less $19.98 admitted to be due by plaintiff to defendant for adjustments subsequent to the bankruptcy proceedings and due and owing as of June 28, 1957, counsel for plaintiff will prepare and present an appropriate order granting judgment in favor of the plaintiff against defendant in the sum of $2,412.79, plus interest according to law. The Court adopts this opinion as its findings of fact and conclusions of law.